1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARQUIS BRADFORD,

                          Plaintiff,

      v.

STATE OF WASHINGTON, DEPARTMENT
OF CORRECTIONS; MARTHA HAYES; and
JOHN DOES ONE THROUGH TEN,

                    Defendants.

Case No. 3:12-cv-05366-KLS

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

       This matter is before the Court on defendants' filing of a motion for summary judgment seeking dismissal of plaintiff's complaint. Under 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. For the reasons set forth below, the Court finds that defendants' motion should be granted, that plaintiff's federal claims should be dismissed, and that plaintiff's remaining state claims should be remanded to state court.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

       On February 1, 2009, plaintiff–who at the time was an inmate at the Washington State Department of Corrections' (DOC) Airway Heights Corrections Center–injured himself after he fell out of the top bunk of the cell he shared with another inmate. *See* Dkt. 10, p. 8, ¶4.8, 4.20; Dkt. 33 p. 3, ¶5, p. 9, ¶20. Prior thereto DOC medical staff had diagnosed plaintiff with morbid

ORDER - 1

obesity, sleep apnea and asthma. *See* Dkt. 34-2, pp. 17-18, 20. Over the next several months, plaintiff continued to experience pain and other symptoms stemming from his fall. *See* Dkt. 10, pp. 8-10,¶4.20-4.28.

On April 1, 2009, the Washington State Office of Financial Management's Risk Management Division received an unsigned standard tort claim form concerning plaintiff's fall, which lists plaintiff as the claimant and the DOC as the state agency or department responsible for the alleged damage/injury. *See* Dkt. 37, pp. 5-6. The form states that plaintiff continues to suffer both physically and emotionally from the fall due to the State of Washington's negligence, and that he seeks $100,000 in damages. *See id.* at p. 6.[1]

On January 31, 2012, the Risk Management Division received another standard tort claim form regarding the same incident, which again lists plaintiff as the claimant and the DOC as the state agency or department responsible for the alleged damage/injury. *See* Dkt. 34-5, p. 44; Dkt. 39, pp. 5-6. That form, which is signed by plaintiff's legal counsel in this matter, states that plaintiff continues to suffer from pain and other adverse effects of his injury and that he seeks $1,000,000 in damages. *See* Dkt. 39, pp. 6-7, 11-12.

On April 5, 2012, plaintiff filed a complaint for damages in state court alleging he was injured as a result of the February 2009 fall due to the negligence of the DOC and its employees for:

- failing to provide a sleep study or C-Pap machine or otherwise provide proper medical care or reasonable accommodations for plaintiff's sleep

---

[1] Defendants attached a copy of the April 2009 standard tort claim form as an exhibit to their reply brief. *See id.* In a surreply he filed in response thereto, plaintiff argues that exhibit should be stricken because the form is unsigned and therefore irrelevant under Federal Rule of Evidence 401. *See* Dkt. 38. Although as discussed further below it appears plaintiff is correct that strict compliance with Washington's notice of claim statutes is required and that this includes verifying the contents of the standard tort claim form under penalty of perjury via signature – and thus that the filing of the unsigned April 2009 standard tort claim form did not prevent plaintiff's complaint from being timely filed for purposes of his state claims – this does not mean that form is irrelevant to the Court's determination of this issue. As such, plaintiff's request to strike defendants' exhibit is denied.

ORDER - 2

apnea;

- assigning plaintiff to a top cell bunk while he was suffering from sleep apnea in contravention of multiple medical directives to assign him to a lower bunk;

- refusing to assign plaintiff to an available lower bunk after he had fallen off the top bunk once, despite a medical directive requiring this to be done, as well as plaintiff's multiple requests to be assigned to an open lower bunk; and

- failing to properly treat the injuries plaintiff sustained in the February 2009 fall.

*See* Dkt. 1, pp. 5, 18-19. Plaintiff also sought damages under 42 U.S.C. § 1983 alleging that: (1) defendants deprived him of his right to due process under the Fourteenth Amendment for failing to provide constitutionally adequate medical care; and (2) the DOC deprived him of his right to due process under the Fourteenth Amendment for failing to properly train its medical and other staff regarding their obligation to provide such care. *See id.* at p. 19.

On April 25, 2012, defendants removed this matter to this Court, and on May 1, 2012, they filed their answer to plaintiff's complaint, asserting among others the affirmative defense that plaintiffs claims are barred by the statute of limitations. *See* Dkt. 1, p. 3; Dkt. 8, p. 2, ¶ 8. On May 7, 2012, the Court issued a pretrial scheduling order directing that the parties complete discovery by November 2, 2012, and file all dispositive motions by January 4, 2013. Dkt. 9, p. 1.

On May 21, 2012, plaintiff filed an amended complaint for damages alleging essentially the same claims of negligence as he alleged in his original complaint. *See* Dkt. 10, pp. 11-12. In terms of his 42 U.S.C. § 1983 claims, plaintiff alleged defendants other than the State of Washington violated his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fourteenth Amendment: (1) by being deliberately indifferent to the serious risk of harm posed by his sleep apnea and risk of falling

ORDER - 3

and by failing to take reasonable steps to treat his serious medical needs; and (2) by failing to follow directives and procedures with regard to his safety. *See id.* at pp. 12-13. Defendants filed their answer to the amended complaint on June 7, 2012, in which they expressly incorporated the same affirmative defenses they asserted in their original answer. *See* Dkt. 12, p. 2,¶9.

On December 13, 2012, the parties filed a stipulated motion to amend the Court's pretrial scheduling order on the basis of a substantial delay in obtaining medical and other records from the DOC, as well as the need to acquire a large number of medical records from outside sources, necessary to conduct meaningful depositions. *See* Dkt. 13, p. 2,¶1-3. The parties stated they believed they could assemble these records by April 1, 2013, and therefore requested a new discovery cut-off date of October 4, 2013, and a new dispositive motions deadline of January 3, 2014 (*see id.* at¶3-4), which the Court granted in an amended pretrial scheduling order on December 17, 2012 (*see* Dkt. 14, p. 1).

On December 23, 2013, the parties filed another stipulated motion stating that due to the fact that plaintiff had not reached maximum medical improvement, his medical providers could not testify conclusively regarding his treatment, final condition or prognosis, and therefore they were unable to conduct meaningful discovery or engage in discussions regarding settlement. *See* Dkt. 19, pp. 1-2,¶1-2. The parties agreed that a continuance of one year to allow plaintiff's treatment to conclude was appropriate, and requested that the amended pretrial scheduling order again be amended to move the discovery cut-off date to October 3, 2014, and the dispositive motion deadline to January 2, 2015 (*see id.* at p. 2,¶4), which the Court granted in a revised pretrial scheduling order on January 9, 2014 (*see id.* Dkt. 20, pp. 1-2).

On September 29, 2014, the parties filed yet another stipulated motion stating that due to access to care issues and complications with treatment, plaintiff still had not reached maximum

ORDER - 4

medical improvement, and suggested that the case once more be continued for a year to allow plaintiff's treatment to conclude. *See* Dkt. 24, pp. 1-2, ¶¶1-3. The Court granted the parties' request that the discovery cut-off date be moved to October 2, 2015, and that the dispositive motion deadline be moved to January 2, 2016, in light of plaintiff's ongoing medical condition, but warned the parties that given the lengthy delays in the case, it was not inclined to consider further delay in moving the case forward absent unforeseeable and compelling circumstances. *See* Dkt. 25, pp. 2-3.

On October 29, 2015, defendants filed their motion for summary judgment, asserting that plaintiff's amended complaint should be dismissed because: (1) his federal claims are barred by the statute of limitations; (2) he is unable to show defendants acted with deliberate indifference to his health and safety; (3) defendants are entitled to qualified immunity; (4) defendants are not 'persons' under 42 U.S.C. § 1983 and thus cannot be sued under that statute; and (5) plaintiff has failed to state a sufficient negligence claim. *See* Dkt. 29. For the reasons set forth below, the Court agrees that plaintiff's federal claims are barred by the statute of limitations and therefore should be dismissed on that basis. Also for the reasons set forth below, the Court finds plaintiff's remaining state negligence claims should be remanded to state court.

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary

ORDER - 5

judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *See id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *See California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477 U.S. at 290); *see also California Architectural Building Products, Inc.*, 818 F.2d at 1468 ("No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."). In other words, the purpose of summary judgment "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

I.   <u>Plaintiff's Federal Claims Are Barred by the Statute of Limitations</u>

Because 42 U.S.C. § 1983 "does not contain its own limitations period, . . . the Supreme

ORDER - 6

Court has held that the appropriate period is that of the forum state's statute of limitations for personal injury torts." *Elliott v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *see also Felder v. Casey*, 487 U.S. 131, 140 (1988) ("[W]e have directed the lower federal courts in § 1983 cases to borrow the state-law limitations period for personal injury claims."); *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) ("When . . . a federal civil rights statute does not include its own statute of limitations, federal courts borrow the forum state's limitations period for personal injury torts."); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir 1993). In Washington, the limitations period for personal injury torts is three years. *See Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989); *Robinson v. City of Seattle*, 119 Wash.2d 34, 86 (1992); RCW 4.16.080(2).

"Although [state] law determines the *length* of the limitations period, federal law determines when  a civil rights claim *accrues*." *Lukovsky*, 535 F.3d at 1048 (emphasis in original). "Accrual is the date on which the statute of limitations begins to run; under federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Id.* (citations omitted). That is, "the limitations period commences when the plaintiff has 'a complete and present cause of action,'" and–unless otherwise provided by Congress–"a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Bay Area Laundry v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (citations omitted).

As defendant points out, the parties do not dispute that the alleged injury that forms the basis of plaintiff's claims occurred on February 1, 2009. Accordingly, the three year statute of limitations began to run on that date. However, because plaintiff did not file his complaint until April 5, 2012–three years and 64 days after the alleged injury occurred–his federal claims are

barred by the statute of limitations. Plaintiff argues his claims are not barred because he followed

Washington's notice of claims statutes, which provide that "[a]ll claims against the state, or against

the state's officers, employees, or volunteers, acting in such capacity, for damages arising out of

tortious conduct, must be presented to the office of risk management," that no such action may be

commenced "until sixty calendar days have elapsed after the claim" has been presented, and that

"[t]he applicable period of limitations within which an action must be commenced shall be tolled

during the sixty calendar day period." RCW 4.92.100(1); RCW 4.92.110.

Specifically, plaintiff argues that he presented his tort claim to the Department of Risk

Management on January 31, 2012[2]–the day prior to the expiration of the statute of limitations–

which tolled the limitations period for sixty days until March 31, 2012. Because plaintiff filed his

complaint in state court within five court days thereafter on April 2, 2012, his complaint should

be considered timely filed. *See* RCW 4.92.110 ("[A]n action commenced within five court days

after the sixty calendar day period has elapsed is deemed to have been presented on the first day

after the sixty calendar day period elapsed."). Plaintiff further argues Washington's notice of claim

statutes apply to his federal as well as his state claims, because RCW 4.92.100 by its plain

---

[2] The parties disagree on when plaintiff presented his claims to the Department of Risk Management. Defendant asserts this occurred with plaintiff's submission of the first standard tort claim form on April 1, 2009. It appears though that that claim did not comply with statutory requirements. In 2009, an older version of RCW 4.92.100 was in effect, which provided that all claims presented to the Department of Risk Management "shall be verified." *Id.* (2006). In Washington, "strict compliance with the requirements of notice of claim statutes is a condition precedent to recovery." *Levy v. State*, 91 Wash. App. 934, 941 (1998) (quoting *Hardesty v. Stenchever*, 82 Wash. App. 253, 259 (1996)). "The proper remedy for a plaintiff's failure to comply with the statute[s] is dismissal of the suit." *Id.*; *see also Mercer v. State*, 48 Wash. App. 496, 498 (1987) (stating that "the procedures of [RCW 4.92.110] are mandatory," and that "[t]he failure to comply with this statute before the expiration of the applicable statute of limitations results in a dismissal of the case."). Plaintiff did not sign the standard tort claim form submitted on April 1, 2009, which requires the claimant to swear "to the contents of the claim under penalty of perjury," and therefore he failed "to strictly comply with the filing requirements by failing to file a verified claim form." *Levy*, 91 Wash. App. at 942; Dkt. 37, p. 6. Had plaintiff filed his complaint based on that earlier claim form, he would not have been in compliance with RCW 4.92.110 and dismissal of his lawsuit would have been proper. *See id.* On the other hand, there is no dispute that the claim form that was submitted on January 31, 2012, just prior to the running of the statute of limitations, was in compliance. But as explained below, while this may mean plaintiff's *state* negligence claims were timely filed, Washington's notice of claim statutes do not apply to his federal claims.

ORDER - 8

language pertains to "[a]ll claims." RCW 4.92.100(1).

The problem for plaintiff is that the Supreme Court has unequivocally held that state "notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." *Felder*, 487 U.S. at 140; *see also Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999); *Joshua*, 871 F.2d at 886. Thus, while "States may establish the rules of procedure governing litigation in their own courts, . . . [b]y the same token, . . . where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.'" *Felder*, 487 U.S. at 138 (citation omitted). Accordingly, because state notice-of-claim statutes conflict in both their "purpose and effects with the remedial objectives of § 1983, and because [their] enforcement in such actions will frequently and predictably produce different outcomes in § 1983 litigation based solely on whether the claim is asserted in state or federal court," those statutes are "pre-empted when the § 1983 action is brought in a state court." *Id.* (noting further that "[u]nder the Supremacy Clause . . . '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield'") (citation omitted); *see also Wright v. Terrell*, 162 Wash.2d 192, 196 (2007).

Notwithstanding the language of RCW 4.92.110, therefore, Washington's notice of claim requirements do not apply to plaintiff's section 1983 claims, and thus do not prevent those claims from being dismissed as a result of the running of the statute of limitations. In the alternative, plaintiff argues defendants have waived the statute of limitations defense by engaging in conduct inconsistent with asserting that defense. The Court disagrees. As plaintiff notes, the waiver doctrine exists "to foster and promote 'the just, speedy, and inexpensive determination of every action.'" *King v. Snohomish Cnty.*, 146 Wash.2d 420, 424 (2002). To that end, however, it "is

ORDER - 9

designed to prevent a defendant from *ambushing* a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage." *King*, 146 Wash.2d at 424 (emphasis added).

In Washington, courts may find a defendant to have waived an affirmative defense "if either (1) assertion of the defense is inconsistent with [the] defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense." *Id.* "A party is not dilatory in asserting an affirmative defense if it asserts the defense in its answer or amended answer." *Greenhalgh v. Dept. of Corrections*, 170 Wash. App. 137, 144 (2012). As defendants asserted the statute of limitations defense in both their answer and amended answer, they were not dilatory in asserting it. *See Harvey v. Obermeit*, 163 Wash. App. 311, 323 (2011). Plaintiff, though, argues the Court should find defendants have waived the defense because they nevertheless went forward with the case, including engaging in discovery, and litigated it on its merits.

"A party does not waive a statute of limitations affirmative defense, however, [merely] by conducting discovery," since doing so "is not always tantamount to conduct inconsistent with a later assertion of the [affirmative] defense." *Greenhalgh*, 170 Wash. App. at 144 (quoting *Harvey*, 163 Wash. App. at 324). Plaintiff argues defendants' conduct was inconsistent with asserting the statute of limitations in their summary judgment motion, because they have had "three and a half years, during which time, they have served written discovery . . . , answered . . . written discovery, engaged in a discovery conference on the issue of insufficient answers to written discovery, amended their answers substantively, stipulated to the continuance of the trial date, subpoenaed medical records, forwarded stipulations for medical records . . . , stipulated again to the continuance of the trial date, and engaged in discussions regarding settling the case." Dkt. 32, p. 15.

ORDER - 10

In support of his argument that such conduct warrants waiver, plaintiff relies on the Washington State Supreme Court's decisions in *King* and *Lybbert v. Grant Cnty.*, 142 Wash.2d 29 (2000), as well two decisions from the Washington State Court of Appeals: *Romjue v. Faierchild*, 60 Wash. App. 278 (1991), and *Blankenship v. Kaldor*, 114 Wash. App. 312 (2002). Each of those cases, however, is distinguishable from the one at hand:

> . . . In *King* . . . the defendant raised a claim-filing defense in its answer but did not clarify the defense in response to an interrogatory, and the parties engaged in 45 months of litigation and discovery, during which time the defendant sought four continuances and filed a motion for summary judgment that did not mention the defense. The court found waiver on the basis that the defendant's assertion of the claim-filing defense, in a motion to dismiss after the case was set for trial, was inconsistent with this prior behavior. . . . In *Romjue* . . . a defendant engaged in discovery unrelated to a service-related defense before moving to dismiss, and waited until three months after the statute of limitations expired to notify plaintiff's counsel of insufficient service, although plaintiff's counsel wrote to defendant's counsel prior to the expiration of the statute of limitations that he understood the defendants had been properly served. The court held the defendant waived the defense by conducting himself in a manner inconsistent with the later assertion of the defense. . . . In *Lybbert*, . . . waiver of a service-related defense was found where the defendant acted as if it were preparing to litigate the merits of the case by engaging in discovery, none of which had to do with sufficiency of service of process; associating with outside counsel; discussing the merits of the case and the possibility of mediation with opposing counsel; and failing to timely respond to the plaintiff's interrogatory asking whether the defendant planned to rely on any affirmative defenses, where a timely response would have allowed the plaintiff several days to cure defective service. . . .

*Harvey*, 163 Wash. App. at 223-225 (internal footnote and citations omitted).

Thus, in *King* the defendant's actions indicated it had "abandoned the defense" in failing to clarify its position in regard thereto despite being asked about it by the other side, in *Romjue* the defendant's actions indicated it had "actively sought to conceal" the affirmative defense, and in *Lybbert* the defendant had engaged "in considerable discovery not related to the defense" while failing to respond to the plaintiff's discovery request in a manner that would have allowed the plaintiff to cure the defect. *Id.*; *see also Lybbert*, 141 Wash.2d at 40 ("[A] defendant cannot justly

ORDER - 11

be allowed to lie in wait, masking by misnomer its contention that service of process has been insufficient, and then obtain a dismissal on that ground only after the statute of limitations has run, thereby depriving the plaintiff of the opportunity to cure the service defect.") (quoting *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1096 (2nd Cir. 1990)). In *Blankenship* the defendant engaged in "conduct that was similar to that of the defendants in *Romjue* and *Lybbert*," and while it did not appear she was "lying in wait" as in *Lybbert*, she "was tardy in asserting the insufficient service defense when [she] had the necessary facts within [her] control to make the critical assessment and failed to act earlier." 114 Wash. App. at 319-20. "[I]n this sense" then, "the defense was dilatory within the spirit of *Lybbert*." *Id.*; *see also Board of Regents of Univ. of Wash. v. Seattle*, 108 Wash.2d 545, 553 (1987) ("Silence coupled with knowledge of an adverse claim will estop a party from later asserting an inconsistent claim.").

Here, though, not only did defendants assert the statute of limitations defense in their answer and amended answer, but the record fails to show that they engaged in any conduct thereafter–up to and including the filing of their summary judgment motion–that indicates an abandonment of that defense, that they failed to clarify their position in regard thereto, that they actively sought to conceal it, that they failed to respond to a discovery request in a manner that would have allowed plaintiff to cure the defect,[3] or that they were "lying in wait" or tardy in asserting the defense when they had the necessary facts to assert it. To the contrary, defendants were responsive to plaintiff's inquiries concerning the basis of that defense from very early on in the discovery process.

---

[3] Indeed, as defendants point out, because the statute of limitations ran *before* plaintiff filed his original complaint, he could not have cured the statute of limitations defect regardless of when defendants filed their summary judgment motion. *See Oltman v. Holland America Line USA, Inc.*, 163 Wash.2d 236, 246-47 (2008) (finding "no prejudice" in defendant's raising of affirmative defense in untimely answer, because "the timing of the complaint in state court left too little time to correct the filing mistake in any event.").

ORDER - 12

On December 5, 2012, plaintiff's counsel served an interrogatory on defendants' counsel requesting the factual basis for each affirmative defense set forth in their answer–including the statute of limitations defense–to which defendants' counsel objected on the basis that it improperly attempted to shift the burden of proof. *See* Dkt. 34-5, pp. 64-65. In a follow-up letter, plaintiff's counsel informed defendants' counsel he did not believe defendants' interrogatory answers complied with the applicable civil rules, and asked for a meet and confer conference. *See* Dkt. 34-6, p. 3. On January 23, 2013, both counsel held a discovery teleconference in which they agreed that defendants "would supplement [their] answer . . . with a good faith attempt to respond substantively with regard to each affirmative defense, and where [they are] unable to respond, to state why." *Id.* at p. 5. On February 20, 2013, defendants provided the following supplemental answer:

> Objection: This is am [sic] improper interrogatory because it attempts [sic] the burden of proof to defendant to disprove plaintiffs claims.
>
> . . .
>
> Without waiving objection, discovery is continuing.
>
> SUPPLEMENTAL ANSWER
>
> a) The claims arising under 42 USC§ 1983 are not subject to the claim filing statute set forth in RCW 4.92 because they are not claims against the State of Washington. Therefore the 60 day tolling provision set forth in RCW 4.92.110 does not apply to the individual claims against Martha Hayes.
>
> b) The claims against Martha Hayes are barred by the statute of limitations which ran on January 31, 2012. The lawsuit was not filed until April 5, 2012.
>
> The claims against the State of Washington Dept. of Corrections were subject to the claim filing statute. Plaintiff's tort claim was filed on January 31, 2012. This tolled the statute of limitations for sixty days until March 31, 2012. Plaintiffs lawsuit was not filed until April 5, 2012. Both the § 1983 claims against defendant Hayes and the negligence claims against defendant DOC are barred by the statute of limitations.

ORDER - 13

*Id.* at pp. 11-12. Plaintiff therefore was well aware of the factual basis for defendants' statute of limitations defense long before defendants filed their summary judgment motion.

Plaintiff also quotes from *King* to argue defendants should be estopped from raising the statute of limitations defense, in light of the fact that the discovery process has gone on for more than three and a half years:

> . . . both [parties] engaged in extensive, costly, and prolonged discovery and litigation preparation only to have the case decided on procedural grounds completely unrelated to the discovery in which they were engaged. The claim filing defense could have been disposed of early in the litigation before any significant expenditures of time and money had occurred. . . .

146 Wash.2d at 426. First, as noted above, *King* is distinguishable on its facts. Second, discovery in this matter as defendants point out does not seem to have been necessarily extensive or costly. *See* Dkt. 34. Third, although the discovery process has been fairly prolonged in the sense that it has gone on for some three years, that is largely due to the agreement of *both* parties that the case be continued for much of that period due to the need for plaintiff to achieve maximum medical improvement. While failure to achieve maximum medical improvement is not necessarily the fault of plaintiff, neither can it be said to be that of defendants. Fourth, in *King* the Washington State Supreme Court emphasized not only the importance of raising the affirmative defense earlier, but also of–as noted above and unlike here–raising it "at a time when the [plaintiffs] *could have remedied the defect*." 146 Wash.2d at 426 (emphasis added). Defendant's assertion of the statute of limitations defense in their summary judgment motion thus is not inconsistent with their prior behavior, and therefore they have not waived that defense.

II.     Plaintiff's State Negligence Claims Should be Remanded to State Court

"The decision to retain jurisdiction over state law claims," even when "the federal claims over which" the court "had original jurisdiction are dismissed," is entirely "within the district court's

ORDER - 14

discretion, weighing factors such as economy, convenience, fairness, and comity. *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endant jurisdiction is a doctrine of discretion, not of plaintiff's right."). As the Supreme Court has explained:

> [The justification for retaining such] jurisdiction lies in considerations of judicial economy, convenience and fairness to the litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely tied to questions of federal policy that the argument for exercise of pendant jurisdiction is particularly strong.

*Gibbs*, 383 U.S. at 726 (internal citation and footnotes omitted); *see also Reynolds v. Cnty. Of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996).

Generally, therefore, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Wren v. Sletten Const. Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed before trial, the *proper* exercise of discretion requires dismissal of the state claim.") (emphasis in original). Accordingly, while the decision whether to exercise pendant jurisdiction "should be informed by values of economy, convenience, fairness and comity," the "primary responsibility for developing and applying state law rests with the state

ORDER - 15

courts," and therefore "when federal claims are eliminated before trial, district courts should ordinarily decline to exercise" such jurisdiction. *Barnes v. Cnty. of Placer*, 654 F.Supp.2d 1066, 1073 (citing *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997); *Gini v. Las Vegas Metro Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994)); *see also Gibbs*, 383 U.S. at 726.

As noted by the Supreme Court, furthermore, "when a district court may relinquish jurisdiction over a removed case involving pendant claims, the court has discretion to remand the case to state court." *Cohill*, 484 U.S. at 351; *see also Gibbs*, 383 U.S. at 726. The Court finds remanding plaintiff's state negligence claims is appropriate in this case. First, as just discussed, plaintiff's federal claims have been dismissed prior to trial. Second, the parties strongly disagree as to how plaintiff's state negligence claims should be analyzed. Defendant argues they should be analyzed under a theory of premises liability. Plaintiff counters his claims are grounded in the duty of jail officials to insure inmates' health, safety and welfare.

Third, each theory of liability presents difficulties in terms of the Court's analysis. For example, defendant admits that "[t]here is no Washington state appellate case that determines the classification of an inmate for purposes of premises liability actions." Dkt. 29, p. 15. The cases cited by the parties are also distinguishable on their facts. Fourth, and finally, it cannot be said that plaintiff's negligence claims "are so closely tied to questions of federal policy that the argument for exercise of pendant jurisdiction is particularly strong."[4] *Gibbs*, 383 U.S. at 726  In light of the uncertainty of the applicable state law here–and keeping in mind that in determining whether to remand state claims the "primary responsibility for developing and applying state law rests with the state courts"–it is far better for Washington courts to decide plaintiff's negligence

---

[4] Indeed, negligence "does not arise to the level of a constitutional violation" such that a valid claim therefor may be brought under 42 U.S.C. § 1983. *Strong v. Woodford*, 428 F.Supp.2d 1082, 1085 (C.D. Cal. 2006); *see also Hines v. Boothe*, 841 F.2d 623, 624 (5th Cir. 1988) ("Negligence does not state a claim under section 1983."), *overruled on other grounds in Huguet v. Barnett*, 900 F.2d 838 (5th Cir. 1990).

1   claims in the first instance than for the Court to do so.[5] *Barnes*, 654 F.Supp.2d at 1073; *see also*

2   *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of

3   comity and to promote justice between the parties, by procuring for them a surer-footed reading

4   of applicable law.").

5                                          CONCLUSION

6          Based on the foregoing discussion, defendants' motion for summary judgment (*see* Dkt.

7   29) is GRANTED, plaintiff's federal claims are DISMISSED with prejudice and his remaining

8   state claims are REMANDED to state court.

9          DATED this 7th day of December, 2015.

10

11

12

13                                         Karen L. Strombom
                                           United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25

26   _____
     [5] To the extent plaintiff should be deemed to have properly presented his negligence claims to the Department of
     Risk Management in April 2009 – despite the lack of signature on the standard tort claim form – furthermore, this is
     another issue that would be more appropriate for Washington courts to decide.

ORDER - 17